POYDRAS testator and the objects of his benevolence, when by the very
vs.
MOURAIN. fact of the diminution of price, at the sale of his succession,

<hr>

## POYDRAS *vs.* MOURAIN.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, THE JUDGE
OF THE SECOND PRESIDING.

The heir who succeeds to the rights of his ancestor, may, after the executors
are discharged, enforce the provisions of the ancestor's will, and see that
his intentions are carried into effect against purchasers; although the
heir has no other interest in the matter.

So where the testator provided in his will, that his slaves, after his death,
should be kept on and attached to the plantations on which they were
employed, and that the purchaser should be required to set them free
after twenty-five years, and emancipate and support, without labor, and
give an annual stipend to such as were sixty years old, &c.: *Held*, that
the purchaser could not alienate such slaves apart from the plantation,
and was bound to comply with the conditions and provisions of the will.

This is an action by the heir, as protector of certain slaves,
and to have executed his ancestor's will, in relation thereto.

Julien Poydras departed this life in the year 1824, having
two years previously made a will, containing, among others,

the following dispositions: "Les ventes de mes habitations sous le rapport des esclaves de l'un et de l'autre sexe qui m'appartiennent et qui en dependent, et tous mes esclaves doivent être regardés comme attachés à l'une d'elles, seront annoncées devoir être faites et seront en effet consenties avec l'obligation qui sera imposée aux acquéreurs de ces mêmes habitations, leurs héritiers ou ayans-cause, et avec l'obligation qu'ils contracteront formellement d'affranchir de tous les liens de l'esclavage tous les esclaves de l'un et de l'autre sexe qui seront vendu avec ces mêmes habitations, mêmes les enfans nés ou à naître, de sexe féminine faisant partie de ces mêmes véntes, et ce après jouissance non-interrompue de vingt-cinq ans de ces mêmes esclaves, à compter du jour de la vente; et tous les esclaves faisant partie de ces mêmes esclaves qui, à l'époque de vingt-cinq ans révolus n'auraient pas atteint l'âge voulu par la loi pour leur affranchissement légal, seront tenus de travailler pour et au profit des dits acquéreurs, leurs héritiers ou ayans-cause, jusqu'au moment d'être parvenus à l'âge légal pour pouvoir être libres, comme aussi les dits acquéreurs de ces mêmes habitations pour eux ou leurs héritiers ou ayans-cause, s'obligeront de soigner et traiter avec humanité, et de conserver sur ces mêmes habitations, sans obligation de travail, tous les esclaves de l'un et de l'autre sexe faisant partie de ceux qu'ils auront acquis de ma succession et qui auront atteint avec evidence l'âge de soixante ans; et même de leur donner à chacun d'eux vingt-cinq piastres par an pour leur existence et soulagement de leur vieillesse. Ces conditions sont de rigueur, et toute personne au nom de l'humanité, et particulièrement les officiers public dans l'état, sont par moi autorisés et appellés à les faire exécuter et respecter."

Madam Mourain is the owner of a plantation and a number of slaves, purchased at the public auction of the estate of the late Mr. Poydras, which sale was made in conformity to the clauses and conditions of the will.

In January last, Madam Mourain advertised for public sale, the plantation in three different lots, and the slaves

EASTERN DIST. separately, except children, who were to be sold with their
*May*, 1836. mothers.

POYDRAS
*vs.*
MOURAIN.

Benjamin Poydras de Lalande, styling himself the protector of a number of slaves, filed a petition and order for injunction, in which he states:

" That as one of the heirs of the late Julien Poydras, Esq., deceased, his uncle, and out of respect for his memory, your petitioner finds himself in duty bound, since the executors of the said Julien Poydras have been duly discharged, to see certain clauses of the last will and testament of said Julien Poydras, in favor of all his slaves, faithfully executed.

" Your petitioner therefore further shows, that one of the clauses aforesaid, expressly ordains, that ' the slaves of the testator shall be sold with the several plantations to which said slaves respectively belong, and that the purchasers, their heirs and assigns, shall be formally bound to set free all the slaves of both sexes that shall be sold with the aforesaid plantations, after an uninterrupted possession of twenty-five years from the day of sale ; and all the slaves belonging to the said plantations, who at the expiration of twenty-five years should not have arrived at the age prescribed by law to be set free, shall be bound to work for the benefit of the said purchasers, their heirs and assigns, till they have attained the lawful age to be set free.'

" And your petitioner further shows, that another clause of said last will and testament expressly ordains, that ' the said purchasers of the said plantations shall bind themselves, their heirs and assigns, to take care of, (*soigner*,) and to treat with humanity, and to keep (*conserver*) on the aforesaid plantations, without being bound to work, all the slaves of both sexes, making part of those acquired by said purchasers, and who shall have arrived at the age of sixty years ; and are to pay annually to each of them twenty-five dollars a year, for their living and existence, and to alleviate their old age: those conditions must be rigorously executed.'   As the whole will more fully appear by the said last will and testament, an authentic copy of which is hereto annexed for a

greater certainty, and which your petitioner prays to be permitted to refer to.

"Your petitioner further shows, that in the year 1825, Madam widow Pierre Charles Mourain, residing in this parish, now in the kingdom of France, and represented here by her agent, Peter G. Mourain, Esq., residing in said parish, became the purchaser of the plantation and slaves thereto belonging, situated in this parish, on the river Mississippi, where the late Julien Poydras died, as it appears by the *procès verbal* of adjudication of the Court of Probates, and a notarial act made in accordance with the clauses of the will aforesaid.

"Your petitioner further shows, that notwithstanding the above said clauses and conditions, the said widow Mourain, through her agent, has wrongfully advertised publicly for sale at public auction, the one half of the said plantation, in three different parts, and forty-one or forty-two of the slaves which belong to the said plantation, and which according to public notice, are to be sold individually, and separated from the said plantation.

"Your petitioner further shows, that unless protected by the authority of this honorable court, the slaves aforesaid, in open and unjust violation of the conditions subscribed to by the said widow Mourain, in the *procès verbal* of adjudication, and the notarial bill of sale aforesaid, shall be to their great prejudice, separated from the plantation aforesaid, and from each other, contrary to the will of the said Julien Poydras, and thereby his benevolent and humane intentions be defeated, to the great injury of the aforesaid slaves.

"Wherefore your petitioner, in his aforesaid quality, and with the view of protecting the aforesaid slaves, prays for an injunction to restrain the defendant from proceeding in said sale."

The defendant pleaded an exception to the plaintiff's capacity and right to sue in this case.

She also pleaded to the merits, and denied that the plaintiff or the slaves themselves had any right to sue and maintain this action. She avers, that she had a right to sell the

EASTERN DIST. plantation and slaves as she was about to do; that the will
May, 1836. of the late Julien Poydras, relative to his lands and slaves, has

POYDRAS
vs.
MOURAIN.

been already decided upon and determined by the Supreme
Court, in the case Moosa *vs.* Allain, 4 *Martin, N. S.,* 99,
in which the plaintiff was either a party or interested therein,
and that the decision is in favor of the right of the owners of
the slaves, to sell them separately from the plantation.   She
prays that the plaintiff's petition be rejected, &c.

The district judge who presided, overruled the exception,
and maintained the right in the plaintiff to sue.   On the
merits, judgment was rendered in favor of the plaintiff, and
the injunction was made perpetual.   The defendant appealed.


*L. Janin,* for the plaintiff.

*Mazureau,* on the same side.

1. It will be seen by reference to the record, that both the
defendant and plaintiff are heirs of Julien Poydras ; that
both of them are parties to the sale under which the defendant
purchased the plantation and slaves in question, and that the
plaintiff appears not only for himself, but as the attorney in
fact of all the other co-heirs.

2. The deed of sale under which the defendant purchased,
refers to the will of the ancestor, and incorporates its provi-
sions, terms and conditions in relation to the slaves, which
are accepted and promised to be performed by the purchaser.

3. The plaintiff sues as heir of the late Julien Poydras,
and claims the right to have his last will and testament
executed.   He is one of those to whom the succession
belonged in virtue of said will, and has an interest and
right to have the will carried into effect.

4. The plaintiff, in his own behalf and for his co-heirs,
has a direct interest in this matter, for being sold under the
conditions of the will, the succession of their ancestor brought
a much less price than it otherwise would.

5. The plaintiff would have had a right to institute this
suit, if he were a total stranger.   The testator, in his will,

calls on all persons in the name of humanity, and particularly the officers of the state, to see that his will is executed.

6. The testator had a right to dispose of his slaves as he did. There is nothing in the provisions of his will, or the terms and conditions of the sale of the slaves under it, which derogates from the force of laws, made for the preservation of public order and good morals, nor any thing required in contravention of prohibitory laws.

7. The case of Moosa *vs.* Allain, cited by the defendant, in support of the right to sell the slaves separately, has no application to this case. Whatever might have been the rights of the slave who was plaintiff in that case, the positive provisions of the will, and the contract of sale, must be enforced in the present case.

8. It has been contended, that by the Roman law, slaves could not be attached to the soil, and the Code of Justinian, book 11, title 47, was cited in support of this position. It proves the very reverse of the proposition. See *2d law of the 47th title.* The 7th law of the same title, contains an express prohibition to separate slaves from the lands to which they are attached.

9. It is further added, that every thing which restricts the right of property, must be strictly construed. What does this new principle apply to? Had not Mr. Poydras, and his heirs after him, the right of disposing of their property as they pleased? They had the right to free all the slaves, as soon as the laws would permit, and provide for their future condition.

*Mitchell,* for the defendant.

Two questions are presented in this case :

1st. Can the slaves, either by Poydras, or in their own names, stand in judgment in this form of action?

2d. Supposing they have a right to be heard, does the dispositions of the will of the late Mr. Poydras, authorise this court to pronounce such a judgment as the plaintiff asks?

I. As it is not pretended, that the individuals for whose alleged benefit this suit is instituted, claim to appear as freemen, I shall take the most favorable supposition the case admits, and look upon them as *statu liberi.*

The *statu liber* has no positive unconditional right, but rather an expectancy, entirely conditional, and eventual. He may never arrive at the age required by law for his emancipation.

If we except his right to stand in judgment, when the period arrives at which he may claim his freedom, a limited, and recently granted right of inheriting and having the property bequeathed, preserved by a curator, and perhaps his right to apply for the aid of the courts, if an attempt be made to remove him from the state, before the period at which he may claim his freedom, he differs in nothing from the slave. Like him he is subject to the will and control of his master. If the *statu liber* commit an offence, the master is liable, the same as the master of the slave ; and I am by no means prepared to admit, that the eventual freeman would not forfeit his claim by the commission of a crime, even though it were not of a heinous grade.

Slaves for a time a *statu liberi,* are those who have acquired the right of being free at a time to come, or on a condition which is not fulfilled, or on a certain event which has not happened, but who in the mean time remain in a state of slavery. *Louisiana Code, art.* 37. In this situation they have no right to appear in court, except when the privilege is expressly granted them by law. 7 *Martin, N. S.* 350.

Having shown that a *statu liber* has no right that can authorise him to appear in this action, if a slave for life could not appear, I will now inquire how far the court is authorised to sit and listen to a slave, setting up such or similar pretensions.

If a testator had directed by his will, that the future masters of his slaves should not punish them, and that in case such masters should chastise a slave, the slave should thereupon be entitled to his freedom, could the slave be heard in court, to support his pretensions ? I think not.

If he had appointed the hours of work and rest for the slaves, could the slaves have the aid of the courts? I think not.

If he had directed that such slaves as he might own at his death, should be sold with his plantations, and that neither they nor their offspring should ever be separated, by the future owners, from the lands or plantations, and that said slaves were by the will authorised to stand in judgment, and claim the aid of the courts to enforce the disposition of the will, would such disposition avail and enable the slaves to sue? I think not.

If the testator bequeathed twenty-five dollars a year to certain slaves, can they appear in court to claim the bequest? I think not. It may be a natural, or moral, but it is not a legal obligation, which they can enforce in a court of justice. *Louisiana Code, art.* 1751.

No slaves shall be parties to a suit in civil matters, either as plaintiffs or defendants. *Acts of* 1806, *page* 158, *sec.* 16.

He (the slave) cannot be a party in any civil action, either as plaintiff or defendant, except when he has to claim or prove his freedom. *Civil Code, page* 40, *art.* 18.

A slave is one who is in the power of his master, and who belongs to him in such a manner, that the master may sell him, dispose of his person, his industry, and his labor, and who can do nothing, possess nothing, nor acquire any thing, but what must belong to his master. *Civil Code, page* 10, *art.* 13.

The rules prescribing the police and conduct to be observed with respect to slaves, in this state, and the punishment of their crimes and offences, are fixed by special laws of the legislature. *Louisiana Code, art.* 172.

The slave is entirely subject to the will of his master, who may correct and chastise him, though not with unusual rigor, or so as to maim or mutilate him, or to expose him to the danger of the loss of life, or to cause his death. *Ibid.*, 173.

He (the slave) cannot be a party to any civil action, either as plaintiff or defendant, except when he has to claim or prove his freedom. *Ibid.*, 177.

Slaves cannot sue, either as plaintiffs or defendants, except as relates to their freedom. *Code of Practice, art.* 103.

Individuals cannot by their conventions, derogate from the force of laws made for the preservation of public order, or good morals. *Louisiana Code, art.* 11.

Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed. *Ibid., art.* 12.

I presume it cannot be denied, that the slave could not appear in court, to enforce the disposition of a will, directing he should always remain on a certain plantation; and it appears to me equally clear, that a *statu liber* cannot.

II. This question has been already decided by this court, in the case of Moosa *vs.* Allain, reported 4 *Martin, N. S.* 99.

If the will of the testator was, that the slaves were never to be removed from the plantations, it must be found in its dispositions. I confess I cannot find it in the words, the expression of the will, now contended for.

In the first branch, the testator directs the manner in which his property shall be sold; that is, a plantation and the slaves attached to it, together. He says: "the sale of my plantations, as respects the slaves of both sexes belonging to me, and held by me, and all my slaves are to be looked upon as attached to one of them, shall be announced to be made," &c. He then, in the next disposition, directs, that the sales shall be made with the obligation, which the purchasers shall contract, or enter into, to free the slaves, which shall be sold with the plantations, after an uninterrupted enjoyment of twenty-five years from the date of the sale.

A subsequent clause of the will, which I shall presently consider, directs what is to be done (still, I understand, at the expiration of twenty-five years) with those slaves, who have evidently attained the age of sixty years.

Now, to my apprehension, the words of the will just quoted, are perfectly plain: the services of all the slaves, where the owner pleases, are to be uninterruptedly enjoyed, during twenty-five years.

EASTERN DIST.
May, 1836.

POYDRAS
vs.
MOURAIN.

Nay, more, I avow myself unable to discover that the disposition of the will, as quoted by the gentleman in his petition, differs in any manner from my understanding of it.

The district judge, who delivered an opinion in this case, gave to the will a construction, totally different from what I can find the instrument to authorise. I trust I will not be deemed invidious, if I take a brief review of his opinion. Be this as it may, I believe it my duty to do so, and I shall not evade it.

Madam Mourain in her answer, uses the following words : "Neither Benjamin Poydras de Lalande, as protector, &c., nor the slaves themselves, have any right to maintain this action." Yet the judge says : "It is not pretended that the dispositions of the will, with reference to the slaves, contain any thing, either against the positive laws of the land, or *contra bones mores.*"

The other clause of the will which I have undertaken to examine, is in the following words :

"Comme aussi les dits acquéreurs de ces mêmes habitations pour eux ou leurs héritiers ou ayans-cause, s'obligeront de soigner et traiter avec humanité, et de conserver sur ces mêmes habitations, sans obligation de travail, tous les esclaves de l'un et de l'autre sexe faisant partie de ceux qu'ils auront acquis de ma succession, et qui auront atteint avec evidence l'âge de soixante ans," &c.

This may possibly be looked upon as a kind of emancipation of such slaves as at the expiration of twenty-five years from the sale, should evidently have attained the age of sixty years.

It is believed that nature emancipates most slaves, or at any rate deprives them of the capacity of doing much labor, at the age of sixty years. The master, therefore, will be bound by the duties of humanity, as he is by the law, to support them without work. Even when a slave has been emancipated, and becomes infirm from old age or otherwise, the law has made it the duty of the late master, to provide for him. *Acts of* 1806, *pages* 150, 152, *sections 2, 3 and 4. Acts of* 1807, *page* 86, *section 5.* The will of Mr. Poydras,

therefore, directs little more for this class of slaves, than is directed by law ; perhaps, in fact, it directs less.

It appears to me I have shown,

1. That the individuals, on whose behalf it is alleged this suit is instituted, have no right to stand in judgment ; and,

2. That the only fair construction which can be given to the will of the late Mr. Poydras, is that none of its dispositions, by which he contemplated the amelioration of the situation of his slaves, were by him directed to take place before the expiration of twenty-five years from the day of the sale of his estate.

*Martin J.*, delivered the opinion of the court.

The will of the late Julien Poydras, of the parish of Pointe Coupée, directs that all his slaves at his death, are to be considered as attached to his several plantations, on which they had been and were employed, and that his executors be required to sell them with, and as attached to the plantations on which they were situated, the vendee to come under the further obligation of freeing them at a certain period, and that the slaves thus emancipated, who may evidently be of the age of sixty years and upwards, have the immunity or privilege of remaining thereon, and to be supported without labor being required from them, with an annual stipend in money also allowed, &c.

The defendant purchased from the executors, one of the plantations of the deceased, with a large number of slaves attached thereto, and by the terms expressed in the act of sale, subscribed to the conditions imposed by the will.

In contempt of the obligation thus contracted, the defendant attempted to sell forty-two of those slaves, separately and apart from the plantation. The executors of the late J. Poydras having been discharged from their trust, and being *functi officiis*, the present suit was instituted by the plaintiff as one of the heirs of the testator, who in that capacity sought to have the will carried into effect, by compelling a compliance with its provisions, and the strict performance of

EASTERN DIST.
*May*, 1836.

POYDRAS
*vs.*
MOURAIN.

the contract and sale made under it. He obtained a provisional injunction in the first instance, to stay the sale the defendant was about to make, of the slaves in question.

The defendant excepted to the capacity and right of the plaintiff, to sue and maintain this action. The exception was, however, overruled by the judge presiding, and an answer put in to the merits, in which the defendant asserted her right to sell the slaves, separately and apart from the plantation, alleging that the terms and conditions of the will, which were sought to be specifically enforced, were null and void. The injunction was made perpetual, and the defendant appealed.

An exception to the present plaintiff's capacity to institute a suit of this kind, was pleaded in another case, relating to a number of these slaves, under the will of the late Julien Poydras, and sustained by the judge of the district, then presiding. On appeal, this court reversed the decision of the judge *a quo*, overruled the exception, and maintained the plaintiff's right of action. See *case of Poydras* vs. *Taylor, just decided, ante.* 488.

The plaintiff, after stating his heirship, declares he acts as the protector of the humble beings, who, like himself, were the objects of his ancestor's benevolence.

It was urged with much zeal, in the argument at the bar, that neither the slaves nor any person for them, could stand in judgment to prevent their being sold. In the case of the present plaintiff against Taylor, just decided, and referred to above, this court was of opinion, that after the executors were discharged, the heir had an undoubted right, as having succeeded to all the rights and actions of the ancestor, to require the specific performance of the terms and conditions of a sale of part of the estate, made by the executors, or to demand damages for its non-performance, or to claim its rescission for a breach of its terms and conditions; that this right of the plaintiff was not impaired by an avowal that his object was to see the will of his ancestor rigorously complied with.

*The heir who succeeds to the rights of his ancestor, may, after the executors are discharged, enforce the provisions of the ancestor's will, and see that his intentions are carried into effect against purchasers; although the heir has no other interest in the matter.*

We have no reason to be dissatisfied with the opinion we then expressed, and conclude that the first judge did not err in overruling the exception in this case.'

On the merits, the defendant claims the right to sell these slaves singly, separately and apart from the plantation, under the authority of an adjudged case, *Moosa* vs. *Allain*, 4 *Martin*, *N. S.*, 99.

This was the case of one of the slaves of the late Julien Poydras, who complained of his removal from the plantation to which he was attached, and with which he had been sold at the sale of the estate. This court then expressed the opinion that the will secured to the plaintiff the faculty of staying and being supported on the plantation to which he belonged, and to be emancipated on arriving at the age of sixty years ; but that the purchaser of these slaves had, until their emancipation, the right to their labor wherever he chooses to require it.

The right of the purchaser in that case, was considered merely in regard to the then plaintiff, who was himself a slave. He could vindicate no right in a court of justice, except his claim to freedom, or some matter relating thereto. The rights of the purchaser in that case, who had the slave in possession, in relation to his vendor or any person exercising the rights of his vendor, were not considered ; they could not be in that case.

Admitting that the present plaintiff could not successfully complain and interfere, if the defendant in the present case employed the slaves in question off the plantation with which they were sold, and to which they were attached, it would not necessarily follow that he could not resist the defendant's attempt *to sell them* singly, separately and apart from the plantation. Such a sale would detach them from the plantation, to which the will and the sale made in conformity to it, by the executor of the testator and the ancestor of the plaintiff, require they should remain and continue attached. As long as the defendant, who is the vendee of the executors under the will, continues to be the owner of

both the plantation and the slaves, the exercise of the plaintiff's right to have the condition of the sale specifically performed or executed, remains unimpaired; but if the defendant sells the plantation to three several owners, and the forty-two slaves thereon to as many others, then the exercise of the plaintiff's right in requiring the provisions of the will to be carried into execution, will become extremely difficult, burdensome and precarious.

The defendant will no longer have it in her power specifically to comply with the conditions of the sale. The obligation to support the old emancipated negroes will not attach on the vendees of the land as a servitude. It is a servitude which is essentially due to an estate.

The vendees of the slaves, without notice, will be under no obligation to comply with the terms and conditions of the sale under which their vendor acquired them.

The exercise of the right of the plaintiff, will then be so burdensome, difficult and precarious that the right itself will become almost worthless.

Justice requires that the defendant should not be permitted to disregard the obligation she has solemnly contracted.

But it is urged that the terms and conditions of the will, which are now sought to be enforced, are null and void, as destructive of the absolute power which sound policy and the laws of the land require the master should exercise over his slaves.

So far as regards the slaves, the power of the master is indeed absolute. The slave cannot resist, or be heard if he complain of the abuse of this power; but in relation to other persons, nothing prevents the master from being compelled or coerced to comply with his engagements as vendee, which he contracted when he acquired his slave.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

*Margin note:* Eastern Dist. May, 1836.

POYDRAS
vs.
MOURAIN.

So, where the testator provided in his will, that his slaves, after his death, should be kept on and attached to the plantations on which they were employed, and that the purchaser should be required to set them free after twenty-five years and emancipate and support, without labor, and give an annual stipend to such as were sixty years old, &c.: *Held*, that the purchaser could not alienate such slaves, apart from the plantation, and was bound to comply with the conditions and provisions of the will.